UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AHSAN KAHLON,

                Plaintiff,

v.

STEPHEN R. GREEN, an individual; MAYFAIR CAPITAL GROUP HOLDINGS, LLC; MAYFAIR CAPITAL GROUP LLC; MAYFAIR GROUP L.P.; and NOONMARK ADVISORS, LLC,

                Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

"ECF"

---

Plaintiff, Ahsan Kahlon, by and through his attorneys Latham & Watkins LLP, for his Complaint, alleges upon knowledge as to his own actions, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1. This is an action to recover for breach of contract and other causes of action arising from Defendants' failure to make payments due Mr. Kahlon pursuant to a loan agreement dated September 24, 2007 (the "Note").

2. In addition, Defendants intentionally omitted and misrepresented material facts with the intent and for the purpose of fraudulently inducing Mr. Kahlon to agree to lend the Defendants $1 million ($1,000,000.00).

3. In executing the Note, Mr. Kahlon justifiably and reasonably relied on the Defendants' intentional and material misrepresentations and omissions.

4. Since the execution of the Note, and despite repeated reassurances that repayment would be forthcoming, the Defendants have failed to repay the principal or lawful interest

accrued on the Note. As such, Defendants have failed to perform their contractual duties under the Note and have unjustly enriched themselves at Mr. Kahlon's expense.

## THE PARTIES

5.  Plaintiff Ahsan Kahlon is an individual whose domicile is in and is a resident of Dubai, United Arab Emirates. Mr. Kahlon is a citizen of Ireland.

6.  Upon information and belief, defendant Mayfair Capital Group Holdings, LLC ("Mayfair Holdings") is a Delaware limited liability company with its principal place of business in New York, New York.

7.  Upon information and belief, the sole member of Mayfair Holdings is defendant Mayfair Capital Group LLC ("Mayfair Capital").

8.  Upon information and belief, Mayfair Capital is a Delaware limited liability company with its principal place of business in New York, New York. Mayfair Capital is the sole owner of Mayfair Holdings.

9.  Upon information and belief, the sole member of Mayfair Capital is defendant Stephen R. Green.

10. Upon information and belief, Mr. Green is an individual whose domicile is in Locust Valley, New York. At all relevant times, Mr. Green was, or at least held himself out to be, the Chairman and co-founder of NoonMark as well as an officer and an owner of certain of the Mayfair Entities, as herein defined.

11. Upon information and belief, defendant Mayfair Group L.P. ("Mayfair Group") (collectively with Mayfair Holdings and Mayfair Capital, the "Mayfair Entities") is a Bermuda limited partnership with its principal place of business in New York, New York.

12. Upon information and belief, the general partner of Mayfair Group is Mayfair Capital.

13. Upon information and belief, the limited partners of Mayfair Group are ATCO Development, Inc. ("ATCO"), which is incorporated in and has its principal place of business in Texas, and Brompton Holdings ("Brompton"), which is organized under the laws of and has its principal place of business in the United Kingdom.

14. Upon information and belief, defendant NoonMark Advisors LLC ("NoonMark") is a Delaware corporation with its principal place of business in New York, New York.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of the claims pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 exclusive of interest and costs. There is complete diversity of citizenship among the parties.

16. Mr. Kahlon is a citizen of Ireland.

17. The sole member of Mayfair Holdings is Mayfair Capital, which is a Delaware LLC with its principal place of business in New York, New York and whose sole member is Mr. Green, an individual who is a citizen of New York. Therefore, for diversity purposes, Mayfair Holdings is deemed a citizen of New York based on the citizenship of its sole member, which for diversity purposes is deemed a citizen of New York.

18. The sole member of Mayfair Capital is Mr. Green, an individual who is a citizen of New York. Therefore, for diversity purposes, Mayfair Capital is deemed a citizen of New York.

19. Mayfair Group has one general partner, Mayfair Capital, and two limited partners, ATCO and Brompton.

20. The general partner of Mayfair Group is Mayfair Capital, which is a Delaware LLC with its principal place of business in New York, New York and whose sole member is Mr. Green, an individual who is a citizen of New York. Therefore, for diversity purposes, the

general partner of Mayfair Group is deemed a citizen of New York based on the citizenship of its sole member.

21.     Mayfair Group's limited partner ATCO is a Texas corporation with its principal place of business in Houston Texas.

22.     Mayfair's Group's limited partner Brompton is a United Kingdom corporation with its principal place of business in the United Kingdom.

23.     This Court has personal jurisdiction over the Mayfair Entities by virtue of their continuous and systematic business activities in the Southern District of New York, as well as the location of their principal places of business in the Southern District of New York.

24.     This Court has personal jurisdiction over Mr. Green by virtue of his continuous and systematic business activities in the Southern District of New York, as well as by his domicile in New York.

25.     This Court has personal jurisdiction over NoonMark by virtue of its continuous and systematic business activities in the Southern District of New York, as well as the location of its principal place of business in the Southern District of New York.

26.     Venue is proper pursuant to 28 U.S.C. § 1391(a) because one or more of the defendants reside in or have their principal place of business in the Southern District of New York.

## ALLEGATIONS

27.     In or about September 2007, Adel Ghazzawi, on behalf of Mr. Green, NoonMark, and the Mayfair Entities, approached Mr. Kahlon with respect to a loan sought by Mr. Green, and, as a result, Green was eventually introduced to Mr. Kahlon.

28. Following one or more initial conversations between Mr. Green and Mr. Kahlon, Mr. Green emailed Mr. Kahlon a proposal for a loan that would later be memorialized in the Note. The email was sent on or about September 22, 2007.

29. In the September 22, 2007 email, Mr. Green, NoonMark, and the Mayfair Entities proposed and sought a $1 million loan "to support the acquisition of another asset management company."

30. In the September 22, 2007 email, Mr. Green, NoonMark, and the Mayfair Entities proposed an arrangement whereby Mr. Green, NoonMark, and the Mayfair Entities "shall return full principal with an additional payment of $100,000 within 45 Calendar days of the receipt of funds." Mr. Green, NoonMark, and the Mayfair Entities characterized "[t]he return scenario" as being "simple."

31. The September 22, 2007 email represented that, "[t]he security is simple as well. We pledge the full assets and collateral of the firm, NoonMark (the bank, the equity, the assets, all JV deals including THFitzgerald, Boomerang, Arden, and Asia Source), as well as Mayfair and myself personally."

32. The loan proposed by Mr. Green, NoonMark, and the Mayfair Entities was memorialized in the Note.

33. Mr. Green, NoonMark, and the Mayfair Entities drafted the Note.

34. Pursuant to the Note, Mr. Kahlon agreed to, and did, lend NoonMark $1 million.

35. Pursuant to the Note, the loan "shall be calculated at a monthly rate of one twelfth of a nominal annual rate, the nominal annual rate being 81% per cent per annum."

36. The Note did not indicate what law governed. Governing law was not discussed by or among Mr. Kahlon, Mr. Green, NoonMark, or the Mayfair Entities during the negotiation of the Note.

37. Mr. Green, NoonMark, and the Mayfair Entities, upon information and belief, intentionally omitted any reference to governing law in the Note or any discussions about governing law during the negotiations of the Note in an effort to preserve their ability to avoid their obligations by arguing that New York law should govern.

38. Pursuant to the Note, the interest "shall be payable by [NoonMark] to [Mr. Kahlon] upon payment of the loan. This note shall be repaid in full with an additional payment of $100,000 any day prior or at the 45 Calendar Day term."

39. The Note was "fully secured by all assets of NoonMark Advisors LLC, as well as by Stephen R. Green personally." Upon information and belief, however, Mr. Green and NoonMark lacked sufficient assets to repay the loan.

40. That security induced Mr. Kahlon into executing the Note.

41. The Note was executed by Mr. Kahlon, Mr. Green, and a NoonMark representative.

42. At the time, and unbeknownst to Mr. Kahlon, Mr. Green, NoonMark, and the Mayfair Entities, upon information and belief, had no intention of performing their obligations under the Note.

43. On or about September 26, 2007, Mr. Kahlon wired $1 million to NoonMark in accordance with the terms of the Note.

44. On information and belief, the $1 million was not used by Mr. Green, NoonMark, or the Mayfair Entities for the stated purpose of "support[ing] the acquisition of another asset management company."

45. In executing the Note, Mr. Green, NoonMark, and the Mayfair Entities failed to disclose to Mr. Kahlon that, if New York law were to apply to the Note, the Note's interest rate would be deemed usurious. In executing the Note, Mr. Kahlon reasonably and justifiably relied on Mr. Green's, NoonMark's, and the Mayfair Entities' intentional and material omission regarding the usurious nature of the Note, if New York law were to apply to the Note.

46. Neither Mr. Green, NoonMark, nor the Mayfair Entities have repaid the loan memorialized in the Note.

47. Subsequent to execution of the Note and expiration of the forty-five day period of remittance, and in an effort to forestall enforcement of the Note, Mr. Green, NoonMark, and the Mayfair Entities made numerous representations ratifying the Note and stating that funds for repayment of the Note had been transmitted and/or would be forthcoming. Specifically, Mr. Green, NoonMark, and the Mayfair Entities stated that the Note would be repaid, at least in part, on or about, among other occasions: November 9, 2007; November 13, 2007; November 19, 2007; November 28, 2007; January 18, 2008; January 26, 2008; and February 15, 2008.

48. On May 15, 2008, in an email later forwarded to Mr. Kahlon, Mr. Green wrote: "We expect to close on the public asset management acquisition no later than June 30th, however this should be announced in some form by next Tuesday . . . ."

49. On May 16, 2008, in an email later forwarded to Mr. Kahlon, Mr. Green wrote: "Our larger deal is anticipated to announce on Tuesday of next week (which would free up obviously the sufficient cash for Kahlon and the timing of course assumes all regulatory

approvals by then); hopefully this will proceed quickly and smoothly and we can leverage that source to take care of Kahlon immediately. Kahlon has a priority on any obligation at either of our companies."

50. Also on May 16, 2008, Mr. Green proposed to Mr. Kahlon via a phone call and an email two scenarios under which the Note would be satisfied. The first plan was "to simply utilize the proceeds of the transaction anticipated for next Tuesday to satisfy in full all obligations as a result of this [N]ote." The second plan was "a means to insure prompt repayment should Plan A fail to materialize."

51. Upon information and belief, the "public asset management acquisition" referenced in the May 15 and May 16 emails was the transaction at issue in *J. Giordano Secs. LLC v. Mayfair Capital Group Holdings, LLC*, No. 08-cv-8410 (S.D.N.Y.) (the "Giordano Transaction"), which, upon information and belief, never was consummated.

## CAUSES OF ACTION

### COUNT I

**Breach of Contract**

52. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 51 of its Complaint as if fully set forth herein.

53. The Note is a valid and enforceable contract between, on the one hand, Mr. Kahlon and, on the other, Mr. Green, NoonMark, and the Mayfair Entities.

54. Mr. Kahlon has, in good faith, duly and fully performed all of his obligations under the Note.

55. Pursuant to the Note, Mr. Kahlon is entitled to repayment of the principal and lawful interest.

56. Mr. Green, NoonMark, and the Mayfair Entities wrongfully refuse to repay the principal or lawful interest accrued on the principal.

57. Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful refusals to repay the principal or lawful interest accrued on the principal are without justification.

58. Because of Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful and unjustified failure to pay the principal or lawful interest accrued on the principal, Mr. Kahlon has been, and continues to be, damaged.

## COUNT II

### Fraudulent Inducement - Contract

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 of its Complaint as if fully set forth herein.

60. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities intentionally omitted the material fact that the Note set its interest rate at a usurious level, if New York law were to apply to the Note.

61. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities intentionally omitted the material fact that neither Mr. Green, NoonMark, nor the Mayfair Entities intended to perform their obligations under the Note.

62. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities misrepresented the material fact that the $1 million loaned would be used for the acquisition of an asset management company.

63. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities misrepresented the material fact that the Note would be adequately secured by the assets of Mr. Green, NoonMark, and the Mayfair Entities.

64. In order to cause Mr. Kahlon to forego or delay legal action on the Note, Mr. Green, NoonMark, and the Mayfair Entities misrepresented the material fact that the Giordano Transaction would be consummated, thereby providing sufficient funds to satisfy the Note.

65. Mr. Green, NoonMark, and the Mayfair Entities knew the existence of the foregoing material facts, yet, in order to cause Mr. Kahlon to execute the Note and, later, to delay legal action on the Note, intentionally omitted and misrepresented them.

66. Mr. Kahlon, in good faith, justifiably and reasonably relied on the intentional, material omissions and misrepresentations of Mr. Green, NoonMark, and the Mayfair Entities.

67. Mr. Kahlon has, in good faith, duly and fully performed all of his obligations.

68. Pursuant to the Note, Mr. Kahlon is entitled to repayment of the principal and lawful interest.

69. Mr. Green, NoonMark, and the Mayfair Entities wrongfully refuse to repay the principal or lawful interest accrued on the principal.

70. Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful refusals to repay the principal or lawful interest accrued on the principal are without justification.

71. Because of Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful and unjustified failure to pay the principal or lawful interest accrued on the principal, Mr. Kahlon has been, and continues to be, damaged.

## COUNT III

**Fraudulent Inducement – Tort – Punitive Damages**

72. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 71 of its Complaint as if fully set forth herein.

73. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities intentionally omitted the material fact that the Note set its interest rate at a usurious level, if New York law were to apply to the Note.

74. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities intentionally omitted the material fact that neither Mr. Green, NoonMark, nor the Mayfair Entities intended to perform their obligations under the Note.

75. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities misrepresented the material fact that the $1 million loaned would be used for the acquisition of an asset management company.

76. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities misrepresented the material fact that the Note would be adequately secured by the assets of Mr. Green, NoonMark, and the Mayfair Entities.

77. In order to cause Mr. Kahlon to forego or delay legal action on the Note, Mr. Green, NoonMark, and the Mayfair Entities misrepresented the material fact that the Giordano Transaction would be consummated, thereby providing sufficient funds to satisfy the Note

78. Mr. Green, NoonMark, and the Mayfair Entities knew the existence of the foregoing material facts, yet, in order to cause Mr. Kahlon to execute the Note and, later, to delay legal action on the Note, intentionally omitted and misrepresented them.

79. Mr. Green's, NoonMark's, and the Mayfair Entities' conduct was morally culpable, evincing a high degree of moral turpitude and demonstrating wanton dishonesty.

80. Mr. Kahlon, in good faith, justifiably and reasonably relied on the intentional, material omissions and misrepresentations of Mr. Green, NoonMark, and the Mayfair Entities.

81. Mr. Green, NoonMark, and the Mayfair Entities wrongfully refuse to repay the principal or lawful interest accrued on the principal.

82. Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful refusals to repay the principal or lawful interest accrued on the principal are without justification.

83. Mr. Green's, NoonMark's, and the Mayfair Entities' fraudulent inducement of Mr. Kahlon here is part of a pattern directed at the public generally.

84. Because of Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful and unjustified failure to pay the principal or lawful interest accrued on the principal, Mr. Kahlon has been, and continues to be, damaged.

## COUNT IV

### Negligent Misrepresentation

85. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 84 of its Complaint as if fully set forth herein.

86. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities negligently omitted the material fact that the Note set its interest rate at a usurious level, if New York law were to apply to the Note.

87. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities negligently omitted the material fact that neither Mr. Green, NoonMark, nor the Mayfair Entities intended to perform their obligations under the Note.

88. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities negligently misrepresented the material fact that the $1 million loaned would be used for the acquisition of an asset management company.

89. In order to cause Mr. Kahlon to execute the Note, Mr. Green, NoonMark, and the Mayfair Entities negligently misrepresented the material fact that the Note would be adequately secured by the assets of Mr. Green, NoonMark, and the Mayfair Entities.

90. In order to cause Mr. Kahlon to forego or delay legal action on the Note, Mr. Green, NoonMark, and the Mayfair Entities negligently misrepresented the material fact that the Giordano Transaction would be consummated, thereby providing sufficient funds to satisfy the Note

91. Mr. Green, NoonMark, and the Mayfair Entities knew the existence of the foregoing material facts, yet, in order to cause Mr. Kahlon to execute the Note and, later, to delay legal action on the Note, omitted and misrepresented them.

92. Following execution of the Note, Mr. Green, NoonMark, and the Mayfair Entities were unable to perform their obligations under the Note.

93. In order to forestall Mr. Kahlon's enforcement of the Note, on numerous occasions, but not limited to November 9, 2007, November 13, 2007, November 19, 2007, November 28, 2007, January 18, 2008, January 26, 2008, and February 15, 2008, Mr. Green, NoonMark, and the Mayfair Entities represented that payment of the Note had been transmitted and/or would be forthcoming.

94. At the time of those statements and at no time since those statement have Mr. Green, NoonMark, and the Mayfair Entities been able to or willing to satisfy their obligations under the Note.

95. At the time of those statements, Mr. Green, NoonMark, and the Mayfair Entities knew or should have known them to be false and made in the absence of a reasonable exercise of care.

96. In reasonable reliance on the statements, Mr. Kahlon executed the Note and delayed taking legal action to enforce the Note.

97. Because of Mr. Green's, NoonMark's, and the Mayfair Entities' negligent misrepresentations, Mr. Kahlon has been, and continues to be, damaged.

## COUNT V

### Unjust Enrichment

98. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 97 of its Complaint as if fully set forth herein.

99. In executing the Note, Mr. Kahlon, in good faith, conferred a benefit on Mr. Green, NoonMark, and the Mayfair Entities, namely the provision of $1 million.

100. Mr. Kahlon did not confer this benefit on Mr. Green, NoonMark, and the Mayfair Entities gratuitously.

101. Mr. Green, NoonMark, and the Mayfair Entities unjustly obtained and continued to wrongfully retain the benefit of $1 million without adequately compensating Mr. Kahlon.

102. Mr. Green, NoonMark, and the Mayfair Entities wrongfully refuse to repay the principal or any lawful interest accrued on the principal.

103. Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful refusals to repay the principal or any lawful interest accrued on the principal are without justification.

104. Mr. Green's, NoonMark's, and the Mayfair Entities' continued retention of the $1 million is against equity and good conscience.

105. Because of Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful and unjustified failure to pay the principal or lawful interest accrued on the principal, Mr. Kahlon has been, and continues to be, damaged.

## COUNT VI

### Breach of Covenant of Good Faith and Fair Dealing

106. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 105 of its Complaint as if fully set forth herein.

107. The Note is a valid and enforceable contract between, on the one hand, Mr. Kahlon and, on the other, Mr. Green, NoonMark, and the Mayfair Entities.

108. Mr. Kahlon has, in good faith, duly and fully performed all of its obligations under the Note.

109. Pursuant to the Note, Mr. Kahlon is entitled to repayment of the principal and lawful interest.

110. The Note implies a covenant of good faith and fair dealing.

111. Mr. Green, NoonMark, and the Mayfair Entities wrongfully refuse to repay the principal or lawful interest accrued on the principal.

112. Mr. Green's, NoonMark's, and the Mayfair Entities wrongful refusals to repay the principal or lawful interest accrued on the principal are without justification.

113. Because of Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful and unjustified failure to pay the principal or lawful interest accrued on the principal, Mr. Kahlon has been, and continues to be, damaged.

## COUNT VII

### Quantum Meruit

114. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 113 of its Complaint as if fully set forth herein.

115.   To the extent, if any, that the Note is found to be invalid or unenforceable, Mr. Kahlon has nevertheless provided valuable services to Mr. Green, NoonMark, and the Mayfair Entities, with their knowledge and acceptance.

116.   Mr. Kahlon performed these services with the expectation of receiving compensation.

117.   Mr. Green, NoonMark, and the Mayfair Entities were aware of Mr. Kahlon's service and wrongfully accepted all services provided to them by Mr. Kahlon.

118.   Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful refusals to compensate Mr. Kahlon for his services have denied Mr. Kahlon of the reasonable value of the services rendered.

119.   Mr. Green's, NoonMark's, and the Mayfair Entities' refusals to compensate Mr. Kahlon for the services rendered are without justification.

120.   Because of Mr. Green's, NoonMark's, and the Mayfair Entities' wrongful and unjustified failure to compensate Mr. Kahlon for the services rendered, Mr. Kahlon has been, and continues to be, damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks monetary damages in an amount to be proven at trial and/or reformation of the Note.  Plaintiff also seeks punitive damages, prejudgment interest, attorneys' fees, costs and disbursements, attachment of assets in an amount not to exceed Plaintiffs' damages, and any other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff respectfully demands a trial by jury of any and all issues triable of right by a jury in the above-captioned action.

Dated: New York, New York
       July 17, 2009

Latham & Watkins LLP

*[signature]*

Richard D. Owens (RO 4070)
Joseph M. Salama (JMS 2213)
885 Third Avenue
New York, NY 10022
(212) 906-1200

*Counsel for Plaintiff*
*Ahsan Kahlon*